HON. PIERPOINT ISHAM,  } ASSISTANT JUDGES.
HON. MILO L. BENNETT,  }

---

GEORGE MELLISH *v.* ROSWELL ROBERTSON.

[IN CHANCERY.]

*Bill for Redemption, &c.*.

A mistake of the law is not ordinarily a ground of relief in equity.

Where the form of conveyance is absolute, and a writing giving the grantor the right to repurchase, any time within three years, and the grantor suffered more than half the term of the statute of limitations upon the land, to lapse, without taking any steps towards redeeming, *it was held*, that this lapse of time, is an important consideration in determining the right of the grantor to redeem.

And *it was held*, that when the writing is in the form of a mortgage, or when it has all along been constantly recognized as such, lapse of time short of fifteen. years, is regarded as unimportant.

But when the writing is in form an absolute conveyance, with a right of repur
chase, at a short date, and the securities are surrendered, and the full price of
the land paid, and the grantor lies by, for years, without complaint, or taking any
steps towards redemption, and in the mean time, the grantee in apparent good
faith, disposed of the premises, *it was held*, that this makes a strong case against
granting relief, and redemption was denied the grantor.

APPEAL from the Court of Chancery.  The orator brought this
bill to redeem certain premises in the village of Bellows Falls.
And the orator alleges in his bill, that one Stephen J. Mellish, be-
ing indebted, on the third day of August, 1839, to the defendant
in the sum of $1465, for the purpose of securing the payment of
the said sum, conveyed by his deed of warranty of that date, to
the defendant, certain premises in the village of Bellows Falls, (the
premises being fully described in the bill,) and that the premises
were subject to a lease of part of the same, to one John W. Moore,
and a lease of another part to one Daniel Verder, and that on the
same day, said Stephen J. assigned the said leases to the defendant.
That then and there, as part of the contract, and in consideration
of said conveyance, and of said assignments of said leases, the de-
fendant, under his hand and seal, agreed with said Stephen J. by
way of defeasance, at any time within three years from said third
day of August, 1839, to reconvey to said Stephen J. the premises
conveyed as aforesaid, on the payment by said Stephen J. of the
aforesaid sum of money, and the interest thereon, after deducting
therefrom the rents of said premises.  That the defendant on said
third day of August, 1839, in pursuance of said conveyance, and
the assignment of said leases, entered into and took possession of
said premises, and continued in the possession and occupancy
thereof, either by himself, his tenants, or assigns, and thereby en-
joyed the full use and benefit, and received all the rents and prof-
its thereof, and applied them to his own use, and by means there-
of, had been repaid the interest and a large part of the principal
due and secured to him, as aforesaid.

That on or about the 7th day of May, 1843, the said Stephen
J. being indebted to the orator, in about the sum of――――, in or-
der to provide for and secure the payment thereof, transferred to
the orator, all his right and title in and to said premises, and in
the right in equity of redeeming the same, arising, created and ev-
idenced, by said agreement of defendant, of all which, the defend-
ant had due and full notice.

That the orator is informed and believes, that the defendant had conveyed said premises by his deed of warranty, and that the same were held by such deed, by some person unknown to the orator. And that the orator since, and the said Stephen J. before said assignment, and transfer to the orator, frequently applied to the defendant, and requested him to come to an account for the rents and profits of said premises, and make application to the payment of what was due the defendant on said indebtedness of the said Stephen J., and to receive the balance, if any, of said indebtedness, (which the orator has ever been, and still is ready and willing, and the said Stephen J. had been ready to pay,) and deliver up the possession, and reassure the title by proper conveyance of said premises to the orator, or said Stephen J.

*Prayer*—that an account may be taken of what, if any thing was due to said defendant on said indebtedness of said Stephen J., principal and interest; and that an account also be taken, of the rents and profits of said premises received by said defendant, or by any other person by his order, or for his use, or which, without his wilful default or neglect, might have been received ; and that said rents and profits, be applied to the payment of said indebtedness ; and that the orator, be permitted to redeem said premises ; and that the defendant be decreed to reconvey, and reassure to the orator, the title to said premises, in fee, by good and sufficient assurances, free from any and all incumbrances made or suffered by him, or any person claiming under him, and to deliver up the possession of said premises to the orator, or to such person as the orator should appoint and direct. And in case of the failure or inability of the defendant to do so, that the defendant be decreed to pay the orator in money, the full and just value of the said premises, after deducting therefrom, the sum remaining and found due, and decreed to be paid by the orator for the redemption of the said premises.

The defendant answered, and set forth among other things, that on or about the fifth day of September, 1833, the said Stephen J. Mellish was indebted to the defendant in the sum of $1100, on two promissory notes of that date, and to secure the payment thereof, gave the defendant a mortgage upon the premises described in the orator's bill of complaint; and that after said notes became due, the defendant called on said Stephen J. for the payment there-

Mellish *v.* Robertson.

of; and that on the third day of August, 1839, the defendant made an arrangement with said Stephen J., by which the defendant took an absolute deed of the premises aforesaid, subject to said leases, together with an assignment of the said leases, in full payment and discharge of said indebtedness on said notes, and at the same time paid the said Stephen J. a sum of money as the difference between the price of said premises, and the amount of said indebtedness.

That the whole sum allowed and paid for said premises, was $1465; and that defendant, then and there, gave up said notes, and cancelled said indebtedness, and so had no claim in law, or equity on said Stephen J., on any demand or indebtedness whatever ; and that defendant denies, that said absolute deed was given by said Stephen J., for the purpose of securing the payment of said $1465, or any sum; that the defendant avers and insists, that it was an absolute and unconditional sale, and in consideration thereof, and the assignments of said leases, the defendant paid to said Stephen J., the above named sum of money ; and that at the time of executing said conveyance, on said third day of August, 1839, said Stephen J., desired the privilege of repurchasing said premises, at any time within three years thereafter, by paying said sum of $1465, and the interest thereon, first deducting from the same, the rents which the defendant might receive from said premises, to which defendant consented, and that a written agreement was executed by the defendant to that effect; and that the defendant denies, that said contract is or was intended as a simple agreement of resale.

That defendant admits, that he went into possession, receiving rents, paying taxes and insurance, and making repairs thereon, till the 22d day of October, 1842, on which day defendant conveyed the premises by deed of warranty, to one Daniel Verder for the sum of $1200, and gave up possession to said Verder, and has not since that time had or exercised any control over the same, or received the rents and profits thereof; that for any thing defendant knows to the contrary, said Stephen J. may have assigned to the orator as alleged in said bill, but that defendant knows nothing about it.

And that defendant denies, that said Stephen J. ever offered to pay any thing under pretence of redeeming said premises, or ever called on defendant to account for the rents and profits thereof, or demanded a reconveyance thereof, or offered to pay any pretended

indebtedness to the defendant growing out of said transaction of August 3d, 1839. And that defendant admits, that the orator called on the defendant soon after he sold to said Verder, as aforesaid, saying that said Stephen J. claimed that defendant was bound to pay him whatever sum the rents and profits, during the three years, exceeded the interest on the sum of $1465, that defendant refused to account for said rents and profits, stating to the orator, that defendant was only bound to account for them, in the event that Stephen J. repurchased said premises, within the three years limited for that purpose, which said Stephen J. had failed to do; that defendant admits, that in March of the year 1850, the orator offered to the defendant a sum of money to apply on or in full payment of the pretended indebtedness of the said Stephen J. to the defendant, and demanded a conveyance of the premises to him, as the assignee of said Stephen J., and that defendant declined to receive the money so offered, and refused to make the conveyance demanded, as aforesaid, by the orator; and that defendant denies all confederacy, &c.

To the answer of the defendant, the orator duly made and filed his replication, and testimony was taken, which tended to show, on the part of the orator, that said Stephen J. understood the transaction of August 3d, 1839, was the same as a mortgage, and that a Mr. Campbell, the lawyer, who made the writings so informed and advised the said Stephen J. and the defendant, and that said Stephen J. intended to redeem, &c., and that he did not consider the indebtedness cancelled &c. The testimony on the part of the defendant, tended to show that the conveyance to him was absolute, and if the said Stephen J. did not redeem or repurchase in the said three years, that after that time, he had no right to do so, and that said Stephen J. said that if he did not do so, within the three years, he should not redeem, &c.

December Term, 1852, COLLAMER, CHANCELLOR, *pro forma,* ordered and decreed that the bill be dismissed, that the expense of taking the account should not be incurred, until decided by the Supreme Court to be necessary.

*Tracy, Converse, & Barrett* for the orator.

*H. E. Stoughton* for the defendant.

Mellish *v.* Robertson.

The opinion of the court was delivered by

REDFIELD, Ch. J. This is a bill to redeem certain premises in the village of Bellows Falls. The only question of importance in the case, is whether the contract of the third of August, 1839, was what it purports on its face and in its terms to be, a sale of Stephen J. Mellish's interest in the land, in payment of his previous debt, and money then paid to him by Robertson, with the right of repurchase, in three years, or whether there was still secured to Mellish, a redeemable interest in the premises beyond that.

The testimony of Campbell shows very clearly, that he supposed the writing in its legal effect and indeed any contract, in the power of the parties to make, would leave a right of redemption, in Mellish, and that he so informed the parties at the time. Of course then, Mellish, as he had confidence, in Campbell, as a man learned in the law, to some extent certainly, would naturally conclude such would be his *right*, in law. But this seems to have been an after thought somewhat, and a result of his legal rights, as viewed by counsel. For Robertson applied to Campbell, to make a writing, giving only the right of repurchase. And from S. J. Mellish saying, that if he did not redeem in three years, he should not redeem at all, it is natural to conclude, that it had been agreed to limit his right in the premises to that term.

In regard to the legal inference, it is no doubt true, Mr. Campbell was mistaken. And, so far as the parties relied upon him, he misled them, in regard to the legal effect of the contract. But it is not, and could not be claimed, that this is a ground of relief, in equity. 1. A mistake of the law, is not ordinarily, a ground of relief, in equity. 2. It does not appear, that this mistake, of the legal effect of the contract, led them to make any different contract, from what they would otherwise have made. Before this, it would seem there had been a debt merely, and a security, by what was, or was equivalent, to a mortgage. At this time, August 3, 1839, an entire new form of contract was adopted. This indicated, very clearly, some different purpose. The form of the writings certainly indicate, very clearly, a purpose of selling the land to Robertson, in payment of his demand, and money then advanced. The former securities are then given up. The grantee takes possession, the price fixed is, according to the preponderance of proof, certainly not far from the fair value, at the time. These

considerations, and many others induce us to believe the parties intended to effect, what the writings indicate, if this could be done legally.

And we see nothing to indicate, in the remotest degree, any fraud or oppression, practised upon Mellish, or that he had, at the time, any just ground to expect that any redeemable interest in the land, was secured to him, beyond the term of three years, unless it was an invincible legal result, and of this, surely he should run his own hazard.

Some circumstances are relied upon, as showing the transaction to have been intended, as a mere mortgage.

The sixty-five dollars, which Mellish testified was for the future use of the money; the letter of Robertson in 1841, showing that he had paid Mellish's order.

The sixty-five dollars, if made up altogether, as Mellish says, does not seem to be a circumstance, at all decisive, in the matter. It was probably fixed upon, as the agreed extra interest, during the three years. But it does not seem necessarily or naturally to point, with any degree of certainty, to a right of redeeming the premises, beyond the term, fixed in the writing. The payment of the order is perhaps satisfactorily explained, upon the ground, that during the three years, the defendant might naturally have expected, that Mellish would repurchase, according to the writing. There is nothing in the letter showing on what account the order was paid.

The lapse of time, being more than half the term of the statute of limitations upon land, is an important consideration, in determining the right to redeem. From the third day of August, 1839, to the twenty-eighth day of March, 1850, the matter rests, before any decisive step is taken, by the orator, towards redeeming the premises.

It is true, if the writing be in form a mortgage, or if it have been all along constantly recognized, as such lapse of time, short of fifteen years, is regarded, as unimportant. But when the writing is in form an absolute conveyance, with a right of repurchase, at a short date, the securities are surrendered, the full price of the land paid, and especially when the grantor lies by, for years, without complaint, or taking any steps towards redemption, and in the mean time, the grantee has, in apparent good faith, disposed of the

premises, it certainly makes a strong case against granting relief, far stronger, as it seems to me, than the case of *Conner* v. *Chase*, 15 Vt. 764, where redemption was denied.

The decree of the Chancellor is affirmed.